**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| **COREY JACKSON,** | : | |
| | : | |
| **Plaintiff,** | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **03 Civ. 2737 (BSJ) (RLE)** |
| **DANIEL SENKOWSKI,** | : | |
| | : | |
| **Defendant.** | : | |

---

**To the HONORABLE BARBARA S. JONES, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, Corey Jackson, a New York state prisoner at Clinton Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition was received by the *Pro Se* Office in this District on February 10, 2003. Jackson was convicted of three counts of murder in the second degree (N.Y. PENAL LAW § 125.25(1)), and sentenced to three consecutive indeterminate terms of twenty-five years to life. (Pet. ¶¶ 3-5.) These sentences were to run consecutively to a sentence of twenty-five years to life for a previously imposed felony murder conviction. (Aff. of Karen Swiger in Opp'n to Pet. for a Writ of Habeas Corpus, October 30, 2003 ("Swiger Aff."), ¶ 6.)

Jackson contends that his incarceration violates the United States Constitution in that: 1) he was denied effective assistance of trial counsel because counsel failed to (a) challenge a juror for cause, (b) object to the prosecutor's opening statement, or (c) request an accomplice corroboration charge; 2) he was denied a fair trial because the trial court failed to dismiss a juror for cause; 3) the trial court erred in admitting statements of a witness as a past recollection recorded; 4) the trial court erred in denying a motion to dismiss the indictment pursuant to a

*Brady* violation; and 5) the evidence did not prove his guilt beyond a reasonable doubt. (Pet. ¶ 13.)  For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

**A.    Factual Background**

**1.    The Incident**

Jackson was a manager in the Orange Top crack organization, which dealt crack in the Bronx.  (Swiger Aff., Ex. 2 at 4.)  Pedro Rosario headed the Orange Top and Gary Crespo served as his "right-hand man."  *Id.*  Other managers included Milton Harris and Nathan Jordan.  *Id.* Otis Blair, Damien Salgado and Danny Santiago, a sixteen-year old and two fifteen year olds, respectively, were "bottlers," responsible for placing the crack into orange top vials in apartment 4-S at 350 St. Ann's Avenue. *Id.* The vials were then sold out of the lobby of 445 East 140th Street. *Id.*

On May 18, 1992, at approximately 4:00 p.m., Jackson and Harris met Rosario at 445 East 140th Street. *Id.* at 5. Rosario said that Blair was "jerking him" and beating him out of money. *Id.* He put out a $2,500 contract on Blair's life.  *Id.*  Harris overheard Jackson say, "I'll do it . . . I'm going to get one of my boys." *Id.* at note 6. Jackson then exchanged his black nine-millimeter Glock gun for Rosario's silver nine-millimeter Taurus gun. *Id.* at 5-6. At approximately 10:30 p.m. that night, Jackson and Harris went to 350 St. Ann's Avenue with a mutual friend, Nicholas Taylor ("Taylor"). *Id.* at 6. Harris and Taylor waited on the fourth floor staircase while Jackson approached apartment 4-S. Harris heard gunshots less than two seconds after Jackson left. *Id.* at 7. At the sound of the gunshot, Taylor fled down the stairs. *Id*. Harris then saw Jackson come from the direction of apartment 4-S, and heard more gunshots. *Id.*

When the police arrived at the scene of the shooting, they found three bodies: Salgado, Santiago, and Blair. *Id.* at 8. Saldago had been shot four times. *Id.* at 9-10. The nine-millimeter gun, later identified by Harris, which Rosario had directed Jackson to use, was recovered by the police and was determined to have discharged five of the bullets. *Id.* at 10, 12-13.

On May 22, 1992, Detective James Slattery arrested Jackson for the murders of the three boys. *Id.* at 12.

### 2.     The *Brady* Material and Hearing

A few days after the murders, Taylor told Detective Slattery that Jackson was on the stairwell, and not inside the apartment, when the shots were fired. *Id.* at 17-18. The prosecution did not reveal Taylor's statement until the eve of the trial. (Swiger Aff., Ex. 1 at 25.) Taylor's potentially exculpatory statement was particularly significant because Harris had been the only witness present at the scene at the time of the murders and his testimony corroborated the prosecution's case against Jackson. *Id.* at 25. The trial court found that the prosecution had violated *Brady* by failing to disclose potentially exculpatory information until just before trial. (Swiger Aff., Ex. 1 at 7, 9, 22, 31.)  It allowed the statements in to evidence, (Swiger Aff., Ex. 2 at 32), but required the following currative instruction to address the *Brady* violation:

> Nicholas Taylor is no longer available to testify about this subject.  These statements of Nicholas Taylor that have been read to you are now in evidence and are to be considered by you as you would any evidence just as if Nicholas Taylor had taken the stand and had been questioned.
> The People are under an obligation to provide the defendant with evidence in their possession that may aid the defendant.  The people have had these two statements since they were given by Nicholas Taylor and did not turn them over to the defense for almost three and a half years.  You, the jury, may, but are not required, to draw an inference adverse to the People and favorable to the defense for their failure to meet their obligation as to this.

*Id.* The same instruction was given to the jury during the court's final charge. *Id.*

### 3. Jury Selection

Jackson was granted permission to be present for all stages of the jury selection process, (Swiger Aff., Mem. of Law at 18-19.), and counsel allowed him to participate in the selection of jurors. *Id.* at 21. Jackson asked his counsel to request that Michael Sinclair, an employee of the Department of Corrections, be "part of his panel," but counsel's request was unsuccessful because of a challenge by the prosecution. *Id.* at 20-21. Another prospective juror, Robert Manning ("Manning"), informed the court that he worked as a maintenance worker in the Brooklyn House of Detention, the same facility where Jackson was incarcerated while on trial. *Id.* When asked, Manning repeatedly stated that he could be a fair and impartial juror. *Id.* at 19. Manning was ultimately selected to be part of the jury that found Jackson guilty of the murders. (Swiger Aff., Mem. of Law at 13-26.)

### 4. Trial Proceedings

During opening statements, the prosecutor made two references to Jordan, the witness who supplied the police with information that led to the recovery of one of the guns used in the murders. (Swiger Aff., Mem. of Law at 11.) He told the jury that Jackson tried to hand a gun off to Jordan, and that Jordan assisted the police in recovering the gun. *Id.* Jackson's counsel made no objections to these statements by the prosecutor. *Id.*

Detective Slattery testified that on the night of May 20, 1992, at approximately 8:00 p.m., he brought Harris to the 40th Precinct in the Bronx, and Harris gave a statement about the events of May 18. (Swiger Aff., Ex. 2 at 10.) The statement was reduced to writing by Detective Slattery. Harris signed each page of the statement, and certified in writing that he had read it. *Id.*

at 10, 11. When questioned by the prosecutor, Harris testified that while he had been truthful when making his statement, he could no longer recall the conversation. *Id.* at 42-44. The prosecutor moved to admit portions of the statement into evidence, as a past recollection recorded. *Id.* at 44. Specifically, the prosecutor moved to admit the following: 1) "That's when Cory said, I'll do it. Cory said I'm going to get one of my boys. Cory had a black gun, nine-millimeter, in his waist. Pete said use this gun. It's already been used. Gary took the silver gun out of the bag;" and 2) "Cory and Gary switched guns. Cory took the silver nine-millimeter and Gary took the black. The black one is a Glock." *Id.* Over objection by Jackson's counsel, and pending further testimony by Harris and Detective Slattery as to the accuracy of the statements, the court admitted the excerpts into evidence as meeting the test for past recollection recorded. *Id.* at 44-49.

### 5. Post Trial

Approximately two months after his conviction, while being escorted by prison guards, Jackson saw Manning changing a lightbulb at the Brooklyn House of Detention. (Swiger Aff., Ex. 12.) Jackson, who was not cuffed, managed to escape from the guards and attack Manning. *Id.* He slashed Manning on the face several times and then said, "you thought I couldn't get you, but I got you." *Id.* The injuries to Manning's eyes, forehead, scalp and neck required sixty stitches. *Id.*

## B. Procedural Background

On appeal, Jackson raised two claims: 1) the admission of Harris's statements as a past recollection recorded was erroneous, and 2) the trial court should have granted the motion to dismiss the indictment pursuant to a *Brady* violation. (Swiger Aff. ¶¶ 7-8.) The Appellate

Division affirmed Jackson's conviction on September 30, 1999. *Id.* Leave to appeal to the Court of Appeals was denied on January 20, 2000. *Id.* ¶ 10. Jackson subsequently filed his initial habeas corpus petition regarding this conviction on April 20, 2000. *Id.* ¶ 11. On July 23, 2001, District Judge Deborah A. Batts dismissed that petition without prejudice to allow Jackson to exhaust new claims in state court. *Id.* ¶ 15.

Jackson filed a motion to vacate the judgment with the trial court. *Id.* ¶ 16. He claimed that: 1) he was denied effective assistance of trial counsel given the failure to challenge Manning for cause, the failure to object to the prosecutor's mention of Jordan in the opening statement, and the failure to request an accomplice corroboration charge regarding Harris; 2) he was denied a fair trial given the trial court's failure to dismiss Manning for cause; and 3) he was denied his right to a fair trial and to confront witnesses by the prosecution's reference to Jordan in his opening statement when Jordan did not testify at trial. *Id.* On October 10, 2002, the court denied Jackson's motion on the ground, among others, that he unjustifiably failed to raise them on appeal. *Id.* ¶ 18. Jackson sought leave to appeal only two of his claims: 1) that he was denied effective assistance of trial counsel given the failure to challenge Manning for cause, and 2) that he was denied a fair trial given the trial court's failure to dismiss Manning for cause. *Id.* ¶ 18. Leave to appeal to the Appellate Division was denied on January 21, 2003. *Id.* ¶ 20. The instant petition followed.

### III. DISCUSSION

**A.      Threshold Issues**

**1.      Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his

conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir. 2001) (*quoting Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Jackson's conviction became final on January 20, 2000. The original petition was received in this District on April 20, 2000, (Swiger Aff. ¶ 11), and was dismissed without prejudice on July 23, 2001. The current petition was filed on January 30, 2003. (Swiger Aff. ¶¶ 15, 21.) Although more than a year after the conviction became final, the Court found that the statute of limitations should be equitably tolled, and deemed the petition timely filed. *Id.* at ¶ 21.

## 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting Daye v. Attorney Gen. Of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). A petitioner can meet this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.  Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (*quoting Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

Jackson's petition is a "mixed" petition, presenting both exhausted and unexhausted claims.  This Court, however, has the power to deny any unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2). Three of Jackson's claims have been substantively and procedurally exhausted: 1) ineffective assistance of trial counsel based on (a) the failure to challenge Manning for cause; (b) the failure to object to the prosecution's opening statement; and (c) the failure to request an accomplice corroboration charge; 2) denial of a fair trial given the trial court's failure to dismiss Manning for cause; and 3) error by the trial court in that it denied the motion to dismiss the indictment pursuant to a *Brady* violation. The first two claims were raised by Jackson in his NYCPL § 440.10 motion, and he sought and was denied leave to appeal the denial by the trial court. Both claims were based on his constitutional rights under the Sixth Amendment. The third claim was pursued up to the Court of Appeals, and was clearly constitutional in nature.

Although Jackson's claim that the trial court erred in admitting the statements of a witness as a past recollection recorded was appealed through the state court, it is substantively unexhausted because it presents a question of state evidentiary law. Jackson's final claim, that the evidence did not prove his guilt beyond a reasonable doubt, is a non-federal constitutional claim, which is presented for the first time in the instant petition; therefore, it is substantively and procedurally unexhausted. As discussed below, these claims are meritless, and may be dismissed

on the merits.

### 3. Procedural Default

An exception to the exhaustion requirement arises when the petitioner no longer has remedies available in state court so that the claims are deemed exhausted. *Bossett v. Walker,* 41 F.3d 825,828 (2d Cir.1994). "[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed,* 489 U.S. 255, 263 n. 9 (1989). A claim is procedurally barred from habeas review if: (1) the state court declines to address petitioner's federal claim because petitioner failed to meet a state procedural requirement, and (2) the state court decision rested on an independent and adequate state ground, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); Jones v. Vacco, 126 F.3d 408, 414 (2d Cir. 1997) (*citing Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994)); *Pearson v. Greiner*, 2004 WL 2453929, at *8 (S.D.N.Y. Nov. 3, 2004); *McLaurin v. Kelly*, 1998 WL 146282, at *3 (N.D.N.Y. Mar. 27, 1998) (*quoting Lilly v. Gilmore,* 988 F.2d 783, 785 (7th Cir.) *cert. denied,* 510 U.S. 852 (1993)). "In such a case there is a procedural default." *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991).

### a. The Petitioner failed to meet a state procedural requirement.

Respondent argues that Jackson's claim that "trial counsel was ineffective for not challenging juror Robert Manning for cause . . . and that the trial court denied him a fair trial by not dismissing Mr. Manning for cause," is procedurally barred because he failed to raise it on appeal. (Swiger Aff. ¶ 25.) Indeed, the NYCPL § 440.10 court expressly rejected this claim based on a state procedural bar. *Id*.; *See also* (Swiger Aff. Ex. 7.) The court found that Jackson had failed to raise the claims in his appeal to the Appellate Division. The court further found that

there was no evidence that Manning was unable to be a fair and impartial juror especially since, during the voir dire, Manning stated that despite being employed as a maintenance worker with the Department of Corrections in the Brooklyn House of Detention, he could be a fair and impartial juror. This procedural finding serves as a state procedural bar, and Jackson's claim is barred.

### b. The state court decision rests on an independent and adequate ground.

#### (1) Independent state ground

After pursuing a direct appeal, Jackson moved to vacate his conviction pursuant to CPL § 440.10. The Court denied his motion, citing CPL § 440.10(2)(c), and saying that, "although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, defendant unjustifiably failed to raise such ground or issue upon his appeal." (Swiger Aff., Ex. 7 at 3.)

The state court did not reference federal law and did not consider the merits of Jackson's federal claims when it denied his claims on procedural grounds. (Swiger Aff., Ex. 7.) "[W]here a state court merely categorizes a claim as falling under a particular state procedural rule or exception, without considering the merits of the federal claim, the state decision remains 'independent.'" *Besser v. Walsh*, No. 92 Civ. 6775 (LAK) (AJP) 2003 WL 22801952, at *10 (S.D.N.Y. Nov. 26, 2003) (*citing Stewart v. Smith*, 536 U.S. 856, 859-60 (2002), and *Coleman*, 501 U.S. at 741-42). Though the Appellate Division summarily denied leave to appeal without citing any cases (Swiger Aff., Ex. 10), the state court's procedural bar is still an "independent"

state law ground. *Pearson*, 2004 WL 2453929, at *8 ("a summary denial of leave to appeal is of no moment because where 'the last reasoned opinion on the claim explicitly imposes a procedural default' . . . a federal habeas court 'will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits'") (*quoting Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

### (2)    Adequate state ground

"A procedural bar is 'adequate' if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Pearson*, 2004 WL 2453929, at *9 *(citing Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir.1999)). If the "state procedural rule [is] employed 'infrequently, unexpectedly, or freakishly', [it] is not an independent and adequate state ground." *McLaurin v. Kelly*, No. 94 Civ. 1560 (RSP)(GJD), 1998 WL 146282, at *3 (N.D.N.Y. Mar. 27, 1998) (*quoting Lilly v. Gilmore*, 988 F.2d 783, 785 (7th Cir.), *cert. denied*, 510 U.S. 852 (1993)). The Second Circuit has established a three-pronged analysis for determining whether the procedural bar is adequate:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Pearson*, 2004 WL 2453929, at *9 (*quoting Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)). The state court's application of the procedural bar to Johnson's case was not "freakish," *Lilly*, 988 F.2d at 785, but consistent with similar state court decisions. First, the state court reviewed the record and cited CPL § 440.10(2)(c) as support for its decision that the record was sufficient

for the case to be reviewed on direct appeal. (Swiger Aff., Ex. 7, at 3.) Second, a review of the state case law supports the County Court's decision. Though state courts have approved the use of a § 440.10 motion to vacate convictions when the defendant raises an ineffective assistance of counsel claim, *see, e.g., People v. Johnson*, 732 N.Y.S.2d 137, 138-39 (N.Y. App. Div. 2001), where a claim is primarily based on facts in the record, the state courts have indicated that direct appeal should be pursued. *See Clark v. Bennet*, No. 98 Civ. 1445 (FB), 1999 WL 360205, at *2-3 (E.D.N.Y. May 28, 1999). While Jackson raised some new facts, his claims of ineffective assistance of counsel and denial of a fair trial required a review of the trial proceedings. The state court determined Jackson's claim could be adequately addressed by a review of the record on appeal. (Swiger Aff., Ex. 7 at 3.) The facts contained in the exhibit submitted by Jackson do not add anything to bolster support for his fair trial claim or ineffective assistance of counsel claim. *Id.* at 4. The state court's treatment of Jackson's case is therefore consistent with the case law. Finally, Jackson also fails the third prong of the Second Circuit analysis because he did not "substantially comply" with the procedural rule. The record indicates that, at the appellate level, he had new counsel who could have pursued a direct appeal. The court found that the critical facts to adjudicate Jackson's claims were reflected in the record and denied Jackson's motion to vacate on that basis. This is consistent with other state cases and therefore is an adequate state law ground barring Jackson's petition from federal habeas review.

### c. **Jackson has failed to overcome the procedural default**.

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice attributable thereto or "demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750 (citations and

quotations omitted). He fails to adequately explain his failure to pursue his claims via a direct appeal. His brief relates that he filed a motion to vacate in order to raise facts outside the record, but his arguments depend largely on facts within the record. For example, Jackson states that he could not have raised the issue of Manning's employment because his appellate counsel had stated in a previous brief that, based on a review of the jury selection, it was clear that none of the jurors were employed by the Department of Corrections. (Swiger Aff., Ex. 6.) However, the trial court found that Jackson had been present in the courtroom when Manning stated that he was employed by the Department of Corrections. (Swiger Aff., Ex. 7 at 5.) The record, which would have been reviewed on direct appeal, included the information Jackson purports to raise anew in his motion to vacate. The facts outside the record that Jackson raises are not relevant to any of his claims. As the trial court found, the incident reports submitted by Jackson serve only to establish that he attacked Manning after the conclusion of the trial and sentencing, not that he and Manning had any contact prior to that time. *Id.* at 4.

In sum, a review of the facts outside the record, which Jackson's counsel raised in his motion to vacate judgment, demonstrates he had no cause for his procedural default as his claims rely more heavily on facts within the record. The same analysis shows no prejudice to his case, as the facts outside the record would have little impact on his claims. Furthermore, Jackson has not made a showing of factual innocence to demonstrate a miscarriage of justice. *Smith v. Murray*, 477 U.S. 527, 537-538 (1986). Therefore, his claims that: 1) he was denied effective assistance of trial counsel because counsel failed to (a) challenge Manning for cause; (b) object to the prosecution's opening statement; or (c) request an accomplice corroboration charge; and 2) he was denied a fair trial because the trial court failed to dismiss a juror for cause, are

procedurally barred from federal habeas review.

**B.      Merits of Jackson's Claims**

**1.      Standard of Review**

The provisions of the AEDPA constrain a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).

**2.      Ineffective Assistance of Counsel Claims**

Jackson contends that his incarceration violates the United States Constitution in that he was denied effective assistance of trial counsel because counsel failed to (a) challenge a juror for cause, (b) object to the prosecutor's opening statement, or (c) request an accomplice corroboration charge. These claims are procedurally barred, but also fail on the merits.

In order to establish an ineffective assistance of counsel claim, a habeas petitioner must show: (1) "that counsel's performance was [so] deficient" as to fall below "an objective standard

14

of reasonableness" and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The extent of the failing must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

### a.     Failure to challenge Manning for cause

Jackson claims that he was not afforded effective assistance because his counsel failed to challenge Manning for cause after being informed that he worked at the Brooklyn House of Corrections, where Jackson was incarcerated during trial.

Jackson was allowed to be present during all stages of jury selection. He was present when Manning informed the court that he worked in the Brooklyn House of Corrections, and he was also present when Manning repeatedly stated he could be fair and impartial, and that he could decide the case based on the evidence presented at trial. Jackson had input on the composition of the jury members, yet he did not ask his lawyer to challenge Manning for cause because of his place of employment. Indeed, Jackson specifically instructed his lawyer to request that another employee of the Department of Corrections ("DOC") be allowed "as part of his panel." The attorney made the request, but the prosecutor challenged the juror for cause. The decision to allow a Department of Corrections employee as a juror was clearly a matter of strategy. It is not deficient under the *Strickland* standard because Manning gave no reason that would lead a reasonable lawyer to believe that he could not be an impartial juror, despite his place of employment.

Jackson now attempts to establish Manning's bias by relying on his acquittal from the attack charges against Manning. (Pet. ¶ 13.) Jackson attacked Manning two months after being convicted by the jury on which Manning served. However, Jackson's acquittal on charges stemming from that attack is not relevant to the effectiveness of counsel during trial. Nor does the acquittal reflect on Manning's fairness and impartiality as a factfinder during trial. The determination by the trial court that Jackson was not denied his Sixth Amendment right to effective assistance of counsel was not an unreasonable application of clearly established federal law. Therefore, this claim should be **DENIED**.

### b. Failure to object to the prosecutor's opening statement

Jackson alleges ineffective assistance of counsel because counsel failed to object to the prosecutor's opening statement reference to Nathan Jordan. Specifically Jackson contends that the prosecutor claimed he would produce Nathan Jordan who would testify that Jackson had tried to give him a gun, but that ultimately Jordan never testified. Furthermore, Jackson argues counsel should have objected to the fact that Jordan's recorded statement was never turned over to Jackson. (Resp't Mem. of Law at 11.)

In applying the *Strickland* standard and in evaluating the potential deficiency in counsel's performance, "the court must . . . determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A review of the record indicates that in the two instances he mentioned Jordan, the prosecutor never stated that Jordan would testify. (Tr. 12, 19-20.) Since no promise to produce Jordan was ever made, Jackson's second claim – that counsel should have objected to prosecution's failure to turn over Jordan's recorded statement – fails. *See People v.*

*Banch*, 80 N.Y.2d 610, 615 (1992) (holding that because no promise that a certain witness would testify was made, defendant was not entitled to any prior statement the witness might have made).

Furthermore, even if counsel's assistance were ineffective, Jackson has not shown that the trial had been compromised. To do so, Jackson would have to demonstrate that the promise to produce Jordan, rather than the testimony Jordan would have allegedly given, had a deciding impact on the jury, or in the alternative, access to Jordan's recorded statement, would have changed the outcome of the trial. Jackson demonstrates neither of these scenarios to be true and thus his claim should be **DENIED.**

### c.    Failure to request an accomplice corroboration charge

Jackson argues that trial counsel was ineffective because he failed to request an accomplice corroboration charge for the prosecutor's only witness, Milton Harris. (Pet. at ¶ 13.) Under N.Y. CRIM. PROC. LAW § 60.22, "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." Citing Harris's testimony, Respondent argues that, "Nothing in the trial record suggests that Mr. Harris was an accomplice." (Mem. at 12.) However, Harris's statement to the police serves as possible evidence to the contrary. Under N.Y. CRIM. PROC. LAW § 60.22, an accomplice is a witness in a criminal action who may reasonably be considered to have participated in the charged offense. Harris gave a statement to the police saying he was with the defendant, Jackson, when Jackson accepted the "contract" on Otis Blair, that Jackson and he went over to the building where the murders took place, and that he knew Jackson had a gun. (Swiger Aff., Ex. 2 at 10.)  Harris is arguably an accomplice, and if deemed

so, his statement cannot constitute the basis for Jackson's conviction. *See People v. Leon*, 509 N.Y.S.2d 1, 3-4 (App. Div. 1st Dep't 1986) (reversing conviction in the interest of justice because of trial court's failure to give accomplice corroboration charge where conviction rested "substantially" on testimony of accomplice and only one other witness connected the defendant to the crime). *Compare People v. Crespo*, 764 N.Y.S.2d 411, 412 (App. Div. 1st Dep't 2003) (testimony of accomplice was "extensively corroborated" by another witness and scientific evidence) *with People v. Pelc*, 476 N.Y.S.2d 661, 661 (App. Div. 4th Dep't 1984) (prosecution presented testimony from two other witnesses in addition to accomplice). In the present case, evidence against Jackson came almost exclusively from Harris. (Swiger Aff., Ex. 1 at 25.) The only other eyewitness to the crime, Taylor, told the police that Jackson was not in the room when he heard the gunshots. (Swiger Aff., Mem. of Law 17-18.) The only other evidence against Jackson came from Nathan Jordan, who helped the police recover the murder weapon which allegedly came from Jackson. *Id.* at 12. Lacking extensive corroboration, as in *People v. Crespo*, the case against Jackson appears more analogous to that of *People v. Leon*, where conviction was reversed. Given the sparse evidence outside of Harris's testimony, Jackson could successfully argue that if it were not for the failure of counsel to request an accomplice corroboration charge, "the result of the proceeding would have been different." *Strickland* at 694.

Under the *Strickland* standard, however, counsel is not obligated to advance every non-frivolous claim that might have been argued. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Jackson must show not only that counsel omitted a non-frivolous argument but rather that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* Jackson makes no such argument and presents no proof to this end. On

the contrary, the Supreme Court Judge found in a ruling denying Jackson's motion to set aside the judgment of conviction, that "counsel made a cogent opening statement, and made appropriate pretrial and trial motions and applications. Trial counsel vigorously cross-examined all of the People's witnesses, raised appropriate objections, supported by appropriate argument and delivered a focused, structured and coherent summation." (Swigger Aff., Ex. 7). Thus, Jackson's ineffectiveness of counsel claim based on failure to request accomplice corroboration charge would fail even in the absence of a procedural bar and should be **DENIED**.

### 3. Denial of Fair Trial Claim Given the Trial Court's Failure to Dismiss Manning for Cause

Jackson argues that he was denied a fair trial because the trial court failed to dismiss Juror Manning. This claim is procedurally barred and, because Jackson has presented additional information that was not properly presented to the state courts, it is also unexhausted.; 28 U.S.C. § 2254(b)(2).

The Sixth Amendment to the United States Constitution grants criminal defendants the right to be tried by "an impartial jury." U.S. CONST. AMEND. VI.  An impartial jury is one capable and willing to decide the case solely on the evidence before it.  *United States v. Nelson*, 277 F.3d 164, 201 (2d  Cir. 2002) (*citing McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).  A court is obliged to dismiss any juror that affirmatively states that he is unable to be impartial.  *United States v. Perez*, 387 F.3d 201, 206 (2d Cir. 2004) (*citing United States v. Haynes*, 398 F.2d 980, 983-84 (2d Cir. 1968)).  Dismissal must be based on the facts developed at *voir dire*.  *Id.*  Further, the trial court must not place restrictions that infringe on a defendant's right to remove an impartial juror.  *Aldridge v. United States*, 283 U.S. 308 (1931).

The court had no reason to believe Manning would be a biased juror. He repeatedly proclaimed his ability to be impartial. (Swiger Aff., Mem. of Law at 19.) Furthermore, the trial court did not infringe on Jackson's right to dismiss Manning for cause. Jackson cites to no occasion where the trial court refused to consider a challenge for cause against Manning. Therefore, the trial court's decision to seat Manning on the jury was not contrary to, nor involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. 2254(d)(1). Nothing in the additional facts submitted by Jackson concerning his attack on Manning supports his claim that he was denied a fair trial. Therefore, for the reasons discussed above, I recommend that this claim be **DENIED**.

### 4. "Past Recollection Recorded" Claim

Jackson claims that the trial court erred in admitting the statements of a witness as a past recollection recorded. However, as noted above, this claim is substantively unexhausted because it presents a question of state evidentiary law as opposed to a federal constitution violation. Both Jackson's direct appeal to the Appellate Division and his application for leave to appeal to the Court of Appeals, were based on state evidentiary law. The Appellate Division unanimously affirmed the trial court's finding, and the Court of Appeals denied the application for leave. *People v. Jackson*, 695 N.Y.S.2d 357 (N.Y. App. Div. 1999). Jackson's arguments before the state courts did not rely on case law employing constitutional analysis. (Swiger Aff., Ex. 1 at 32-37.) In fact, the case that Jackson claimed was "squarely on point" is *People v. Taylor*, 80 N.Y.2d 1, 8 (1992), in which the court notes New York's "long history of acceptance" of the past recollection recorded doctrine. (Swiger Aff., Ex. 1 at 34.) Further, this court does not find, nor has Jackson pointed to, any basis on which the past recollection recorded claim could be

considered federal or constitutional in nature. Therefore, I recommend that this claim be

**DENIED**.

      5.      **The *Brady* Claim**

      The government may not suppress evidence favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is considered material if there is a reasonable probability that, had the evidence been disclosed, the court proceeding would have produced a different result. *See Kyles v. Whitley*, 514 U.S. 419, 421-22 (1995). The court must determine materiality by examining the cumulative effect of the evidence. *Id.* at 421. The government has an affirmative duty to disclose exculpatory material or impeachment evidence, whether or not it is requested by the defense. *United States v. Jackson*, 345 F.3d 59, 68-69 (2d Cir. 2003) (*citing United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). Suppression of such evidence violates due process and may render the trial inequitable. *Brady*, 373 U.S. at 87.

      Jackson claims that the *Brady* violation in this case requires the dismissal of the indictment. The material in question was a statement by Taylor that contradicted Harris's testimony regarding the timing of the shooting and placed Jackson's guilt into question. The Second Circuit has clearly stated that *Brady* material must be disclosed in time for its effective use at trial. *See Leka v. Portuondo*, 257 F.3d 89, 99-103 (2d Cir. 2001). In *Leka*, the court concluded that evidence was suppressed when a prosecutor withheld exculpatory information, offered by a witness unknown to the defense, until three business days prior to trial. It found that there was insufficient time to allow for effective use of the exculpatory information at trial. *Id.* at

101.  Here, Jackson was provided the exculpatory information six months prior to trial, but Taylor's memory of the events was significantly diminished by the time of the disclosure because of a learning disability, a possibility of which neither party claims to have been aware.

Nevertheless, this is not a case where the defendant was wrongfully deprived of exculpatory information held by an unknown party.  *See Leka*, 257 F.3d 89.  Jackson "knew . . . or should have known" of Taylor's potential value to his case.  *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982).  He was Jackson's "best friend."  (Resp. Mem. at 32.)  Jackson was, therefore, uniquely and favorably positioned to pursue and extract any exculpatory evidence held by Taylor, but failed to do so for three and a half years.

Any prejudice that may have resulted from Jackson's failure to question his best friend was properly addressed by the curative measures taken by the trial court.  The trial court severed Jackson's trial from those of his co-defendants, allowed the admission of Taylor's otherwise inadmissible exculpatory statements, and gave the jury an adverse inference instruction at the time of admitting the statement and at the time of submitting its final charge.  *People v. Jackson*, 695 N.Y.S.2d 357 (N.Y. App. Div. 1999) These curative measures ensured that confidence in the outcome of the trial was not undermined.  *See  Kyles*, 514 U.S. at 434.  The state courts determined that despite the delayed disclosure of two exculpatory statements by the State, the extraordinary sanction of dismissal was unwarranted.  *Jackson*, 695 N.Y.S.2d 357.  This was not an unreasonable application of clearly established federal law.  *See* 28 U.S.C. 2254(d)(1).  For the reasons discussed above, I recommend that this claim be **DENIED**.

### 6.    Challenge to the Weight of the Evidence

Jackson's claim that the verdict was against the weight of evidence is a "pure state law

22

claim" grounded in procedural law.  *Peralta v. Bintz*, 00 Civ. 8935 (HB)(GWG), 2001 WL

800071, at *4 (S.D.N.Y. July 16, 2001).  In contrast, a claim of legal insufficiency of evidence

would constitute a federal claim.  *Ventura v. Artuz*, No. 99 Civ. 12025 (AJP), 2000 WL 995497,

at *7 (S.D.N.Y. July 19, 2000).  A *pro se* petitioner's pleadings are construed liberally and

interpreted "to raise the strongest argument that they suggest." *Id.* (*quoting McPherson v.*

*Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).   A court may, however, construe a *pro se*

petitioner's "against the weight of the evidence" claim as a federally cognizable "sufficiency of

the evidence" claim. *See id.*

The due process clause of the Fourteenth Amendment guarantees that "no person shall be

made to suffer the onus of a criminal conviction except upon sufficient proof." *Jackson v.*

*Virginia*, 443 U.S. 307, 316 (1979); see also *In re Winship*, 397 U.S. 358, 364 (1970).  Sufficient

proof requires evidence necessary to convince the trier of fact "beyond a reasonable doubt of the

existence of every element of the offense." *Jackson*, 443 U.S. at 316.  Accordingly, "in a

challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is

entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no

rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

In his petition, Jackson claims that the evidence presented was insufficient to prove his

guilt beyond a reasonable doubt.  However, Jackson fails to elaborate on his argument.  In order

to properly convict Jackson of second degree murder under New York law, the prosecutor had to

prove beyond a reasonable doubt that Jackson "[w]ith intent to cause the death of another, . . .

[caused] the death of such person or of a third person." N.Y. PENAL LAW §125.25(1).  "A person

acts intentionally with respect to a result or to conduct described by a statute defining an offense

when his conscious objective is to cause such result or to engage in such conduct." *Id.* at §15.05(1).

At trial, Harris testified that on May 18, 1992, Rosario told Jackson that Blair had been stealing the Orange Top organization's money and drugs, and that Rosario would pay $2,500 to anyone who would murder Blair. Harris testified that Jackson stated he would do the job with one of his boys, and then exchanged his black nine-millimeter Glock with Rosario's silver nine-millimeter Taurus. He further testified that later that night he accompanied Jackson to a building located at 350 St. Ann's Avenue. His testimony placed Jackson in the apartment with the victims when a shot was fired. According to Harris, Jackson exited the apartment as more shots were fired, and told Harris not to run, but to just walk out of the building. Harris also testified that the next day Jackson told him he had been paid. Additional testimony at trial also showed that the victims had all been shot in the head execution style. The shots fired originated from a .38 caliber and a nine-millimeter gun, the latter of which was recovered and determined to be the silver nine-millimeter Taurus that Jackson obtained in his exchange with Rosario.

The evidence presented at trial was sufficient to allow a rational trier of fact to find that the prosecutor proved the essential elements of second degree murder, and that Jackson's guilt had been proven beyond a reasonable doubt. Jackson's conviction is not one that is contrary to, nor involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. For the reasons discussed above, Jackson's claim should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Jackson's petition for a writ of habeas

corpus be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall

have ten (10) days after being served with a copy of the recommended disposition to file written

objections to this Report and Recommendation. Such objections shall be filed with the Clerk of

the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable Barbara S. Jones, 500 Pearl Street, Room 620, and to the chambers of the

undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals.

*See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) *(per curiam)*; 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ.

P. 72, 6(a), 6(d).

**DATED: September 10, 2008**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

Petitioner, *pro se*
Corey Jackson
No. 94A2928
Clinton Correctional Facility
P.O. Box 2001
Dannemore, NY 12929

Counsel for Respondent
Robert T. Johnson
District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451

25